Opinion filed November 21, 2013



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00135-CR
_____

## BRIAN KEITH EDWARDS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 29th District Court**

**Palo Pinto County, Texas**

**Trial Court Cause No. 14427**

## M E M O R A N D U M   O P I N I O N

The jury convicted Brian Keith Edwards of the offense of felony driving while intoxicated. Appellant pleaded true to the enhancement paragraph, and the jury assessed punishment at confinement for twenty years and a fine of $10,000. In four issues, Appellant challenges the sufficiency of the evidence, the

admissibility of certain evidence, the trial court's ruling that the medical technologist was a "qualified technician," and the trial court's felony jurisdiction. In a supplemental brief, Appellant challenges the admissibility of the blood test results. We affirm.

Troopers Burt Blue and Travis Alewine observed Appellant speeding; the radar reflected that Appellant was driving 80 miles per hour. The speed limit was 60 miles per hour. The troopers made a U-turn, caught up to Appellant's vehicle, and activated the emergency lights on their patrol car. Appellant pulled into the parking lot of a small store. When Trooper Blue approached, he detected the odor of alcohol coming from the car, and he also smelled alcohol on Appellant when he talked to him. Trooper Blue signaled to Trooper Alewine to indicate that "somebody had been drinking in this car." Trooper Blue asked Appellant for his driver's license and insurance, but Appellant did not "have either one." Trooper Blue noticed that Appellant's eyes were red and glazed and that his speech was slurred. Appellant admitted that he had drunk two 24-ounce beers. Additionally, when asked to step out of his vehicle, Appellant was "unsteady on his feet." Appellant refused to participate in any field sobriety tests, including tests on his eyes that he could perform while lying down, because of a knee injury. Appellant was arrested for driving while intoxicated and transported to the local hospital to have his blood drawn. A medical technologist drew the blood, and a forensic scientist later determined that Appellant's blood alcohol concentration was 0.12.

In his first point of error, Appellant challenges the sufficiency of the evidence to support his conviction. He argues that, "[e]xclusive of the blood test results, . . . the jury could not reasonably convict the Appellant of Driving While Intoxicated."

2

We review the sufficiency of the evidence under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). We review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. We defer to the jury's credibility determinations and the weight to be given to the testimony because it is the jury's duty to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We presume that the jury resolved conflicting evidence in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326.

We measure the sufficiency of the evidence by the elements of the offense as defined in a hypothetically correct jury charge. *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009). A person commits the offense of driving while intoxicated if he (1) was intoxicated (2) while operating a motor vehicle (3) in a public place. TEX. PENAL CODE ANN. § 49.04(a) (West Supp. 2013). The offense is a felony of the third degree if the accused had two prior convictions for DWI at the time of the charged offense. *Id.* § 49.09(b)(2). Appellant restricts his sufficiency challenge to the element of intoxication and argues that "[t]he opinion of the arresting officer is virtually the only evidence" of intoxication.

"Intoxicated" means "not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . . or having an alcohol concentration of 0.08 or more." *Id.* § 49.01(2) (West 2011). The first definition of intoxication is the "'impairment' theory," and the second is the "'per se' theory." *Kirsch v. State*, 306 S.W.3d 738, 743 (Tex. Crim. App. 2010). They are not mutually exclusive. *Id.*

3

As outlined above, the record shows that Appellant was speeding, smelled of alcohol, admitted to drinking, slurred his speech, was unsteady on his feet, and had red and glazed eyes. Appellant told Trooper Blue that he had been drinking since 2 p.m. when he got off work, that his passenger had had less to drink than Appellant, and that he had drunk two 24-ounce beers. The passenger admitted to drinking a six-pack of beer during the last hour. Trooper Blue administered sobriety tests to the passenger, cited him for public intoxication, and released him to a sober driver. The troopers also found open containers in the vehicle and twenty-two unopened beers.

When one trooper said that he had never driven after he had been drinking, Appellant said, "Yes you have." When Appellant asked the troopers what they expected to happen, one of them said that they were concerned about an intoxicated driver crashing into a family, and Appellant said, "I only live five blocks down the road." When Appellant asked what he was being charged with and was told "DWI third," he said, "It should be the fourth. Don't go easy on me." Appellant also claimed that the troopers saw him speeding, turned around, and "got lucky."

Additionally, the jury heard the audio recording during the time that Appellant was in the backseat of Trooper Blue's patrol car. Trooper Blue described Appellant's behavior as agitated, angry, argumentative, and uncooperative. Appellant yelled while Trooper Alewine read the charges against him, threatened to kick the back of the seats, and acknowledged that kicking the seat was an assault on a police officer. When Trooper Alewine called his family to let them know he would be later than expected, Appellant began yelling profanities. He also accused the troopers of costing him his job.

Trooper Blue opined, "With all the training and experience that I have in detecting DWIs, with all the people that I have arrested, and all the schools that

4

I've gone to," "I believe that he was intoxicated." Moreover, Appellant's blood alcohol level was 0.12. After viewing the evidence in the light most favorable to the verdict, we hold that any rational trier of fact could have found beyond a reasonable doubt that Appellant was intoxicated. The evidence is sufficient to support a finding of intoxication under either the impairment theory or the per se theory. Accordingly, we overrule Appellant's first point of error.

In his third point, Appellant argues that the statute regulating the taking of blood specimens "was not complied with and the blood draw results should not have been submitted as evidence to the jury." Appellant also argues that the room where the blood was drawn was not sanitary, but his only objection at trial to the blood test results was based on the qualifications of the technician. Without a complaint that the room was unsanitary, that issue has not been preserved for our review. *See* TEX. R. APP. P. 33.1. Even if it had been preserved, the medical technologist testified that the room was sanitary, "It's a very clean place."

We review a trial court's decision to admit evidence for an abuse of discretion. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). According to Section 724.017(a), "[o]nly a physician, qualified technician, chemist, registered professional nurse, or licensed vocational nurse may take a blood specimen at the request or order of a peace officer under this chapter." Former TEX. TRANSP. CODE § 724.017(a) (2009).[1] Because a medical technologist is not listed in the statute, a medical technologist must be proven to be a "qualified technician" to satisfy the statute. *See Cavazos v. State*, 969 S.W.2d 454, 457 (Tex. App.—Corpus Christi 1998, pet. ref'd) ("We do not agree that we may assume, without proof, that the blood was drawn by a qualified technician.").

---

[1]We quote former Section 724.017(a) as it existed at all relevant times. We note that Section 724.017(a) was amended effective September 1, 2013. *See* TEX. TRANSP. CODE ANN. § 724.017(a) (West Supp. 2013).

Appellant argues that Steven Koehler, the medical technologist who drew his blood, was not a "qualified technician" because "he has no certification to draw blood" and "[t]here is no testimony that [the technician] had on more than one occasion drawn blood for Law Enforcement personnel." Koehler testified that he earned a Bachelor of Science degree in medical technology from Southwest Texas State University in 1988, where he was trained to draw blood. Koehler had worked for Palo Pinto General Hospital for seventeen years, and his duties included both drawing blood and testing it. Koehler was unaware of any certification offered by the State of Texas and explained that he learned through on-the-job training. Koehler described the room as sanitary and explained that he used a "BZK towelette," which is alcohol free, to clean the dirt and oil from Appellant's skin. Koehler testified that the blood collection tube that he used had not been previously used because the vacuum still worked. After he finished drawing Appellant's blood, Koehler put his name on the vial and gave it to Trooper Blue for processing.

Based on the above testimony, we cannot conclude that the trial court abused its discretion when it determined that Koehler was a "qualified technician" within the meaning of Section 724.017(a) and admitted Appellant's blood test results. Appellant's third point is overruled.

In his second point of error on appeal, Appellant contends that his statement to police that he had two prior DWI convictions was elicited after Appellant invoked his *Miranda*[2] rights. Appellant argues that, but for the improperly obtained statements, the troopers would not have known that he had two prior convictions and, thus, would not have known that they could obtain his blood without consent. The State argues that the record shows that the information about

[2]*Miranda v. Arizona*, 384 U.S. 436 (1966).

6

the prior convictions was properly obtained through a check of Appellant's criminal history.

Appellant filed a pretrial motion to suppress but informed the trial court that the motion was filed on a general basis and that no ruling was required. When the officer testified about Appellant's prior convictions, Appellant did not object. Appellant has not preserved this issue for our review. *See* TEX. R. APP. P. 33.1.

Even if properly preserved, any alleged error in obtaining the information that Appellant had prior convictions would be harmless. *See Jones v. State*, 119 S.W.3d 766, 777 (Tex. Crim. App. 2003) (explaining that assessing harm requires courts to "judge the magnitude of the error in light of the evidence as a whole to determine the degree of prejudice to the defendant resulting from that error"). The record shows that the troopers would have been able to legally obtain Appellant's blood because they were aware of his two prior convictions apart from his own admission. Trooper Blue testified that the troopers could run a criminal history check from their vehicle and knew that Appellant "ha[d] already been previously convicted for the two DWIs." Trooper Blue testified that Trooper Alewine had "advised" him that this would be Appellant's third DWI, and Appellant's counsel clarified that "[Trooper Alewine] was listening to the radio at the same time you were when they announced it." The record shows that the troopers learned about Appellant's prior convictions from a criminal history check. Appellant's second point of error is overruled.

We take Appellant's fourth point of error to be one in which he claims that the trial court did not have jurisdiction over this case. We will first address Appellant's contention that the prior convictions alleged in the indictment did not confer felony jurisdiction because they occurred more than ten years before the charged offense. Appellant cites former TEX. PENAL CODE § 49.09(e) (2001) and *Getts v. State*, 155 S.W.3d 153 (Tex. Crim. App. 2005), to support his contention;

7

however, the legislature repealed subsection (e), which limited the age of the prior convictions, in 2005 shortly after the court decided *Getts*. Thus, there is no longer a requirement that the prior convictions must have occurred within ten years of the charged offense.

The State abandoned the date of the prior offense that it had alleged in the second jurisdictional enhancement paragraph of the indictment. With the abandoned date allegation omitted, the second jurisdictional enhancement paragraph of the indictment would read: "AND IT IS FURTHER PRESENTED IN AND TO SAID COURT THAT *PRIOR TO THE COMMISSION OF THE AFORESAID OFFENSE BY THE SAID DEFENDANT* IN THE COUNTY COURT OF PALO PINTO COUNTY, TEXAS, IN CAUSE NUMBER 34545, THE SAID DEFENDANT WAS CONVICTED OF THE OFFENSE OF DRIVING WHILE INTOXICATED" (emphasis added).

Appellant argues that the State improperly amended the indictment when it deleted the date of the prior driving-while-intoxicated conviction in violation of Article 28.10 of the Texas Code of Criminal Procedure. Article 28.10 addresses the amendment of an indictment or an information. TEX. CODE CRIM. PROC. ANN. art. 28.10 (West 2006).

But there is a difference between the amendment of an indictment and the abandonment of language in the indictment. An amendment alters the substance of the indictment. The abandonment of allegations in an indictment or information is appropriate to (1) abandon one more alternative means of committing the offense, (2) reduce the charged offense to a lesser included offense, or (3) eliminate surplusage. *Eastep v. State*, 941 S.W.2d 130, 135 (Tex. Crim. App. 1997), *overruled on other grounds by Gollihar v. State,* 46 S.W.3d 243 (Tex. Crim. App. 2001), *and Riney v. State*, 28 S.W.3d 561 (Tex. Crim. App. 2000); *see also Mayfield v. State*, 117 S.W.3d 475, 476 (Tex. App.—Texarkana 2003, pet. ref'd);

8

*Hardie v. State*, 79 S.W.3d 625, 632 n.1 (Tex. App.—Waco 2002, pet. ref'd). Allegations that are not essential to constitute the offense are surplusage. *Curry v. State*, 30 S.W.3d 394, 399 (Tex. Crim. App. 2000).

Because the date of the offense alleged in the second jurisdictional enhancement paragraph of the indictment in this case was not an essential part of the offense, it constituted surplusage. The allegation that Appellant was convicted of the jurisdictional enhancement offense "prior to the commission of the aforesaid offense by the said defendant" satisfies the requirement of Section 49.09 of the Texas Penal Code that the offense alleged in the second jurisdictional enhancement paragraph was for a prior conviction. *See* PENAL § 49.09 (West Supp. 2013). When the State deleted the date in the second jurisdictional enhancement paragraph, it abandoned that language in the indictment and did not amend it. The abandonment of the date allegation in the second jurisdictional enhancement paragraph of the indictment did not deprive the trial court of jurisdiction in this case. Appellant attacks the amendment of the indictment, not the proof, in connection with the second jurisdictional enhancement paragraph.

Appellant urges that, because the indictment has been amended, the jury charge was erroneous. However, we have held that the State did not amend the indictment, it merely abandoned surplus language in it. The jury charge tracked the language of the indictment without the abandoned language; therefore, no error was committed.

Appellant's final contention is that the impermissible amendment affected his substantial rights, but the only right complained of is that "Appellant was convicted of a felony when only a misdemeanor [was] alleged." As previously discussed, a felony offense was alleged. Appellant's fourth point of error is overruled.

Appellant filed a supplemental brief in which he argues that his "blood was drawn involuntarily and without [his] consent" and that the officer should have obtained a warrant. Appellant's only complaint in the trial court as to the admissibility of the blood test results, however, was that the technician was not qualified. Because Appellant did not complain that a warrant should have been obtained, he failed to preserve this issue for our review. *See* TEX. R. APP. P. 33.1. Appellant's supplemental issue is overruled.

We affirm the judgment of the trial court.


JIM R. WRIGHT

CHIEF JUSTICE


November 21, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.